THE STATE, DEFENDANT IN ERROR, v. EMERY J. SNYDER, PLAINTIFF IN ERROR.

Submitted July 8, 1918—Decided June 17, 1919.

1. Under the fifty-seventh section of our Criminal Procedure act a married woman who has voluntarily appeared before the grand jury, and there charged her husband with a criminal offence, may be admitted to testify against him on the trial of an indictment based upon that charge, if she sees fit to offer herself as a witness.

2. On the trial of an action brought by a wife to recover compensation for the alienation of the affections of her husband, testimony offered by the defendant tending to show that the plaintiff had no longer any affection for her husband, and that for this reason the retention of his affection for her had little, if any, pecuniary value, is material to the issue. Such testimony, if knowingly false, will support an indictment for perjury.

On error to the Hunterdon County Court of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the plaintiff in error, *Frederick A. Pope.*

For the state, *Harry J. Able,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    The defendant was convicted on an indictment for perjury, the charge being that in a suit brought by his wife against one Mable Northcott for the alienation of the affection of Mrs. Snyder's husband (the present plaintiff in error) he falsely testified that on a certain occasion prior to the institution of that suit he had found his wife and a man named Smith in a position which justified the conclusion that they were then engaged in adulterous intercourse.

The principal ground upon which we are asked to reverse this conviction is that the trial court, over the objection of the plaintiff in error, admitted his wife, Mrs. Snyder, to testify as a witness for the state to matters tending to show the truth of the charge laid in the indictment. Whether Mrs. Snyder was a competent witness for this purpose depends upon the true construction of section 57 of our Criminal Procedure act. The pertinent provision of that section is as follows: "Upon the trial of any indictment * * * a married woman shall be admitted to testify against her husband when she is the complainant against him, if she shall

offer herself as a witness." *Comp. Stat., p.* 1838. The uncontroverted testimony in the case shows that no formal com plaint against her husband was made by the witness before a committing magistrate; but it also appears that after the conclusion of the trial of the civil case Mrs. Snyder instructed her attorney to bring to the attention of the prosecutor of the pleas the alleged perjury of the plaintiff in error; that this was done, and, as a result, she was subpœnaed to testify before the grand jury, and that on the trial of the indictment, having been subpœnaed as a witness by the state, she was asked, before being called upon to testify, whether she offered herself as a witness, and answered "I do offer myself."

Under our system of criminal procedure the person instituting the prosecution may, if she sees fit, make a formal complaint before a committing magistrate against the alleged wrong-doer, or she may, if she prefers, make such complaint in the first instance before the grand jury itself. Whether she pursues the one course, or the other, she is equally the complaining witness in the matter. It is argued before us that although this may be so as a general rule, yet, when she appears before the grand inquest in response to a subpœna requiring her presence there, her appearance is not voluntary, and that she is not making any complaint before that body against the alleged wrong-doer, but is giving her testimony solely by reason of the compulsory process. We think this contention is unsound, so far as it has application to the present case. Mrs. Snyder was a voluntary agent in bringing to the attention of the grand jury her husband's criminal act; she followed the proper course in so doing; she had the matter brought to the attention of the prosecuting officer of the state, and it was because of this fact that the subpœna was issued requiring her presence before the grand jury. The subpœna did not compel her to testify before that body against her will, and the presumption is that in giving such testimony she was acting as a free agent in pressing her complaint against her husband. We conclude, therefore, that

in the hearing before the grand inquest she was, within the meaning of the statute, the complainant against him.

We further think that. the contention on the part of the plaintiff in error that his wife's testimony upon the trial was improperly admitted because she did not at that trial offer herself as a witness, is not supported by the fact. As has already been pointed out, before being called upon to testify she was asked if she offered herself as a witness; her answer was that she did. It was at that time a matter for her personal determination whether she would pursue her original complaint by testifying against her husband at the trial, or whether she would not; and the matter was put fairly and squarely before her for decision. If she had declined to offer herself as a witness she would have been under no compulsion to testify. If she desired to continue her prosecution of the charge against her husband by testifying against him at the trial, she was entitled to do so by voluntarily offering herself as a witness against him; and this she did. We conclude, therefore, that she came within the statutory description of a complainant against her husband who offered herself as a witness against him at the trial, and that the testimony was, therefore, properly admitted.

It is next assigned for error that, although the evidence of the plaintiff in error received on the trial of the civil action was knowingly untrue, that fact will not support an indictment for perjury, because his testimony was not material to the issue then being tried. But this assignment, as it seems to us, rests upon a false assumption. The testimony was material, for it tended to show that the plaintiff in that litigation—that is, the wife of the plaintiff in error, had no longer any affection for her husband, and that for this reason the retention of his affection for her was of little, if any, pecuniary value.

It is further contended that the conviction before us should be reversed, for the reason that the court improperly permitted the son of the plaintiff in error to testify to a statement made by his father in a conversation with his mother, and in his presence. The testimony was as follows: "My

father told us we had to get out, because he could not afford to keep my mother, myself and Mrs. Northcott." We think this testimony was competent, for it tended to show that the separation between the husband and the wife was because of the fact that he had taken up with the Northcott woman, and not because of any just ground of complaint which he had against his wife. In other words, that it tended to negative the truth of the statement made by him that he had found his wife and Smith in a position which would justify a belief on his part that she had violated her marriage vows.

There are other assignments of error referred to in the brief of counsel, but not argued with any vigor. We do not consider them of sufficient importance to justify any discussion by us. It is enough to say that they either rest upon an untenable legal theory, or that they could not have prejudiced the defendant in maintaining his defence upon the merits.

The judgment under review will be affirmed.